VIRGINIAN RAILWAY COMPANY *v.* UNITED STATES ET AL.

UNITED STATES ET AL. *v.* VIRGINIAN RAILWAY COMPANY.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA.

Nos. 281, 282. Argued October 29, 1926.—Decided December 13, 1926.

1. Whether a rate is unjustly discriminatory is a question on which the finding of the Interstate Commerce Commission, supported by substantial evidence, is conclusive, unless there was some irregularity in the proceeding or some error in the application of rules of law. P. 663.

2. The fact that the purpose of a carrier in making a trackage arrangement with another is to increase its own business, is not a legal excuse for unjust discrimination in through rates, resulting from the arrangement, among shippers on the carrier's line. P. 663.

3. An order of the Interstate Commerce Commission for abatement of unjust discrimination among shippers on a carrier's line, resulting from a trackage arrangement, may be directed to that carrier as well as to the other with which the arrangement exists, although the latter alone may be responsible for the rates granted the favored shippers. P. 665.

4. A finding of the Commission that a rate is unreasonable, is binding on this Court, when supported by evidence, without regard to the soundness of the Commission's reasoning and conclusions or their consistency with findings in other proceedings.  P. 665.

5. Section 15(3) of the Act to Regulate Commerce does not require that the Commission make a special finding of public interest, before it can prescribe how an existing through rate found to be unreasonable and discriminatory shall be made conformable to law.  P. 666.

6. The fact that an order of the Commission requiring a carrier to establish through rates from its lines over lines of two other carriers may result, through duplication of routes, in discrimination against shippers on lines of those carriers, does not make it unreasonable or otherwise illegal.  P. 667.

7. The force and effect of a decree of a federal court dismissing a bill and dissolving an interlocutory injunction are not suspended as a mere consequence of an appeal to this Court, even if a *supersedeas* is allowed.  P. 668.

8. Under the Act of October 22, 1913, the District Court of three judges has power to grant a stay of an order of the Interstate Commerce Commission. pending appeal to this Court from a decree refusing a temporary injunction and dismissing the bill.  P. 668.

9. The Act of 1913, in this respect, is *in pari materia* with § 266 of the Judicial Code, and to be similarly construed.  P. 671.

10. A stay of an order of the Interstate Commerce Commission pending appeal from a decree refusing an injunction, is not a matter of right, even if irreparable injury may otherwise result to the appellant, and requires much stronger and more special reasons for its justification when the decree has dismissed the bill on the merits than where it is interlocutory.  P. 672.

11. When not otherwise apparent to the parties and the appellate court, the grounds of a decision of the District Court should be indicated by an opinion—particularly in equity matters involving complicated facts.  P. 675.

No. 281, affirmed.

No. 282, reversed.

Cross appeals from a decree of the District Court refusing a temporary injunction and dismissing the bill, in a suit against the United States and the Interstate Commerce Commission to enjoin an order of the latter respecting rates on coal.  The appeal of the defendants was from

so much of the decree as restrained enforcement of the order pending the perfecting and determination of the primary appeal.

*Mr. James W. Carmalt,* with whom *Messrs. E. W. Knight* and *W. H. T. Loyall* were on the brief, for the Virginian Railway Co.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Ewing H. Scott* filed a brief in behalf of the Gulf Coal Co. et al., interveners.

Mr. Justice Brandeis delivered the opinion of the Court.

An extensive territory in West Virginia comprising the coal mining districts known as New River, Tug River and Pocahontas is served by three railroad systems. Each grants blanket rates to destination from the mines within the district served by it. The blanket rates to each destination are the same on all the systems. Two of them, the Chesapeake & Ohio and the Norfolk & Western, have lines extending from the Atlantic Ocean to the Middle West. The line of the third, the Virginian, extends only eastward to tidewater. Some mines in the district are served directly by only one of these railroads, some by more. Ninety-nine mines are located only on the Virginian. Of these 45 enjoy, by reason of the trackage agreements to be described, the same rates to the West as do mines on the Chesapeake & Ohio and on the Norfolk & Western. The remaining 54 are denied the opportunity of reaching the western markets.

Some of the 54 made complaint to the Interstate Commerce Commission that they are denied access to the

western markets; and sought relief under both § 1 and § 3 of the Act to Regulate Commerce. For most of these 54 mines access to these markets was and is physically possible through a junction of the Virginian and the Chesapeake & Ohio. But that route is closed commercially, because these two carriers have not established any joint rates to the West from any of these 54 mines; and the combination of the Virginian's local rate from the mines to the junction with the Chesapeake & Ohio's rates from the junction to the West, results in charges so high as to be prohibitive. The complainants contended before the Commission that the existing rate schedule to the West subjects them to unjust discrimination and, also, that the combination rates are unreasonable. To establish the discrimination, the shippers relied, among other things, upon the fact that 45 other mines located only on the Virginian enjoy the favorable blanket rates to the West. To establish the unreasonableness, they showed, among other things, that mines, similarly situated, located only on the Chesapeake & Ohio and on the Norfolk & Western enjoy those rates.

The Chesapeake & Ohio did not oppose granting to the 54 mines the relief sought. The Virginian resisted strenuously. The complete record of the proceedings before the Commission occupies 713 pages of the printed record in this Court, besides 67 exhibits, many of them elaborate, one covering 89 pages. The proceedings before the Commission, begun on May 15, 1922, did not close until February, 1923. The proposed report of the examiner was served on April 30, 1924, was submitted to Division 3 of the Commission on June 30, 1924, and its original report was filed on March 10, 1925. The Commission found, that the existing rates from the mines in question subjected the shippers to undue prejudice and also that the rates were themselves unreasonable. *Wyoming Coal Co.* v. *Virginian Railway Co.,* 96 I. C. C. 359; 98 I. C. C.

488. It ordered the carriers " according as they participate in the transportation " to cease and desist from collecting, for the transportation of coal from certain stations on the Virginian Railway to interstate destinations in the West, rates which exceed those to be prescribed pursuant to the order; and then directed the carriers to establish " rates which shall not exceed the district rates maintained on like traffic " by those carriers respondents to the same destinations " from mines in the New River districts of the Chesapeake & Ohio Railway Company, and the Virginian Railway Company, respectively, and the Pocahontas and Tug River districts of the Norfolk & Western Railway Company, those districts forming part of what is generally referred to as the Outer Crescent." See *Bituminous Coal to Central Freight Association Territory,* 46 I. C. C. 66, 69. A petition for reargument before the whole Commission was denied on April 14, 1925; but an amended report and order was filed on May 19, 1925.

This suit was brought by the Virginian against the United States, the Interstate Commerce Commission, and the Chesapeake & Ohio, in the federal court for the Southern District of West Virginia, to enjoin the enforcement of the order and to set it aside. All three defendants answered, the Chesapeake & Ohio asserting its readiness to comply with the Commission's order. Several coal companies intervened as defendants. The case was heard, on May 28, 1925, before three judges upon application for an interlocutory injunction and also upon final hearing. The order was assailed mainly on the ground that the findings made were unsupported by evidence. It was also contended, among other things, that findings essential to the relief granted had not been made. Besides the full transcript of the proceedings before the Commission, the Virginian introduced, under objection, some additional evidence in support of a claim that the order should be set aside because of certain facts occurring since it was

entered. On September 19, 1925, the court entered a final decree denying the injunction and dismissing the bill on the merits. No opinion, written or oral, was delivered.

Before entry of the decree, the Virginian indicated an intention to appeal and asserted that irreparable damage would result, pending the appeal, if the decree should be reversed. Thereupon, the District Court included in the final decree a clause restraining enforcement of the Commission's order pending the perfecting and determination of the appeal. No. 282 is a cross-appeal by the United States and the Commission from so much of the decree as restrains enforcement of the Commission's order pending the appeal. No. 281 is the appeal by the Virginian, under the Act of October 22, 1913, c. 32, 38 Stat. 208, 220, from so much of the decree as denied the injunction and dismissed the bill. The contentions made by the Virginian here seem to be the same that were made by it below; and largely the same that it made before the Interstate Commerce Commission.

*First.* The Virginian attacks the Commission's finding of unjust discrimination. There clearly was substantial evidence to support every fact specifically found. To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases, is beyond our province. Whether a rate is unjustly discriminatory is a question on which the finding of the Commission, supported by substantial evidence, is conclusive, unless there was some irregularity in the proceeding or some error in the application of rules of law. *Western Paper Makers' Chemical Co.* v. *United States,* 271 U. S. 268. No irregularity in the proceedings before the Commission is even suggested.

*Second.* The Virginian contends that the specific facts found are, as matter of law, insufficient to support the finding of undue prejudice. The facts material are these.

Ever since the Virginian was constructed, it has adhered to the policy of providing for the output of mines on its line transportation only to tidewater. This policy is pursued, not only because it is deemed profitable to the company, but also because it enables the Virginian to furnish to shippers the most efficient service at reasonable rates. It has never held itself out as equipped to carry coal to the West, or joined in joint rates to western markets. The 45 mines on its line which enjoy the blanket rates to the West, have them as a natural result of certain trackage agreements entered into by the Virginian with the Chesapeake & Ohio for an entirely different purpose. The purpose was to secure additional eastbound tonnage without wasteful expenditure by paralleling branch lines. To be able to secure the eastbound traffic from certain mines located on independent lines connecting with the Chesapeake & Ohio, the Virginian, having acquired the independent lines, sought the right to use that system's tracks to those mines. As compensation for the trackage rights over the Chesapeake & Ohio, it gave that company the right to use the Virginian's tracks to these 45 mines. The carriers, instead of using these trackage rights by operating over the other's tracks, substituted, solely as a matter of economy and convenience, a reciprocal switching arrangement. As a result, the Virginian hauls westbound coal from these 45 mines to a junction with the Chesapeake & Ohio; the latter absorbs the switching charges of the Virginian; and these mines enjoy the same rate to the West as do those located on the Chesapeake & Ohio. But the Virginian's purpose in making the traffic agreement was solely to increase its eastbound traffic.

The fact that the Virginian's intention was not to give the 45 mines a preference over others, but to increase its own eastbound business from mines located on the other system, and that the preference resulting is merely an incident of a legitimate effort to develop the carrier's east-

bound traffic, is not of legal significance. These 45 mines to which the western market has been thus opened, obviously, enjoy thereby an advantage over the 54 mines, found to be similarly situated, to which the market is closed. And the Commission has found that the preference is unjust. In essence, the situation is the same as that considered in *United States* v. *Illinois Central R. R.,* 263 U. S. 515, 523, and *United States* v. *Pennsylvania R. R.,* 266 U. S. 191, 199. The contention that there can be no order to remove the discrimination, because the Virginian is in no legal sense responsible for the lower western rates granted to the favored mines, is likewise disposed of by the earlier case. At pp. 520, 521.

*Third.* The Virginian contends that the evidence before the Commission does not support its finding that the rates on coal from the Virginian's mines *via* the Chesapeake & Ohio are unreasonable to the extent that they exceed the New River district rates maintained by the latter carrier from mines on its own and connecting lines having no other outlet to the western markets. The argument is that these rates can not be considered standards of reasonableness because, as the Commission declared in the present controversy, they are " the outcome of competitive strain and stress through long periods of development," and, as it had stated in an earlier case, they have been made " in practical, if not absolute, disregard of distance, and all transportation conditions that ordinarily are taken into consideration in the making of rates," and " are below the level at which maximum reasonable rates might be maintained." *Bituminous Coal to C. F. A. Territory,* 46 I. C. C. 66, 122, 145. The finding of reasonableness, like that of undue prejudice, is a determination of a fact by a tribunal " informed by experience." *Illinois Central R. R. Co.* v. *Interstate Commerce Commission,* 206 U. S. 441, 454. This Court has no concern with the correctness of the

Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it. *Interstate Commerce Commission* v. *Union Pacific R. R. Co.*, 222 U. S. 541. It was shown that a huge coal traffic moves from this territory, under like operating conditions, at the blanket rates which were voluntarily established by the other carriers to serve mines similarly located. This fact, and much else in the voluminous record, afford substantive evidence to support the finding that the existing rates are unreasonable; and that those which the order directs are reasonable.

*Fourth.* The Virginian contends that the order is void because the Commission directed the establishment of through routes and joint rates without finding that they are necessary in the public interest. Such a finding is essential to the validity of an order under § 15(3). But the order here in question was not sought or made under § 15(3) and does not direct the establishment of through routes and joint rates. Through routes to the West were already in existence. And there were through rates by combination. See *Through Routes and Through Rates,* 12 I. C. C. 163; *Memphis Freight Bureau* v. *Fort Smith & W. R. R. Co.*, 13 I. C. C. 1, 8; *Baer Bros. M. Co.* v. *Mo. Pac. Ry. Co.*, 17 I. C. C. 225; *Swift & Co.* v. *Pa. R. R. Co.*, 29 I. C. C. 464; *Lourie M'f'g Co.* v. *Cincinnati N. R. R. Co.*, 42 I. C. C. 448; *Kansas City Bd. of Trade* v. *A. T. & S. F. Ry. Co.*, 69 I. C. C. 185, 188–189; *St. Louis Southwestern Ry.* v. *United States*, 245 U. S. 136, 139, note 2. The fact that the combination rates were excessive constituted the only obstacle to the movement. The Chesapeake & Ohio did not oppose the reduction of its rates from the junction to the West. It was willing that these 54 mines on the Virginian should enjoy the rates already open to the other 45. The Virginian resisted a reduction of its local rate to the

junction. The Commission found that the combination rate was both unreasonable and discriminatory. It prescribed through rates which it found were reasonable and nondiscriminatory. It did not order joint rates. And no question of divisions was before the Commission. The order was sought and made under § 1 and § 3. Section 15(3) does not require that the Commission must make a special finding of public interest, before it can prescribe how an existing through rate found to be unreasonable and discriminatory shall be made conformable to law.[1]

*Fifth.* The Virginian contends that the order should be set aside because of the following facts which occurred after entry of the original order and before the hearing below. An agreement to lease the Virginian to the Norfolk & Western for 999 years was approved by the respec-

---

[1] Thus in many cases, as in the case at bar, the Commission has found a combination through rate unreasonable or discriminatory as an entirety, and has ordered it to be not higher than a specific amount, without any finding of public interest. *United Verde Extension Co.* v. *Director General,* 57 I. C. C. 625; *Gillespie Coal Co.* v. *Ill. Traction System,* 62 I. C. C. 335; *Freight Bureau* v. *Beaumont, etc., Ry. Co.,* 74 I. C. C. 601; *Ariz. Corp. Comm.* v. *A. T. & S. F. Ry. Co.,* 87 I. C. C. 271; *Babbitt Bros. Trading Co.* v. *A. T. & S. F. Ry. Co.,* 88 I. C. C. 614; *Lone Star Gas Co.* v. *C. C. C. & St. L. Ry. Co.,* 101 I. C. C. 465; *Tioga Coal Co.* v. *B. & O. R. R. Co.,* 101 I. C. C. 611; *Lookout Paint M'f'g Co.* v. *Mo. Pac. R. R. Co.,* 101 I. C. C. 691; *Illinois Oil Co.* v. *Cape Girardeau N. Ry. Co.,* 102 I. C. C. 154; *Humble Oil & R. Co.* v. *L. & N. W. R. R. Co.,* 102 I. C. C. 761; *Eriksen* v. *Ann Arbor R. R. Co.,* 102 I. C. C. 374; *Omaha Grain Exchange* v. *Atl. N. Ry. Co.,* 102 I. C. C. 533; *Vera Chem. Co.* v. *Ala. Cent. R. R. Co.,* 104 I. C. C. 408; *Marion Machine Co.* v. *Pa. R. R. Co.,* 104 I. C. C. 471; *West Va. Paper Co.* v. *B. & O. R. R. Co.,* 104 I. C. C. 495; *Wilson & Co.* v. *C. & O. Ry. Co.,* 104 I. C. C. 641. Compare *Indianapolis Chamber of Commerce* v. *C. C. C. & St. L. Ry. Co.,* 58 I. C. C. 515; *Prairie Pipe Line Co.* v. *Director General,* 88 I. C. C. 167; *J. D. Hollingshead Co.* v. *Deering S. W. Ry. Co.,* 88 I. C. C. 659; *Public Service Comm.* v. *A. T. & S. F. Ry. Co.,* 88 I. C. C. 728; *Caruso & Co.* v. *Chi. & Eastern Ry. Co.,* 102 I. C. C. 619.

tive boards of directors of the two companies; approval
by the stockholders was expected; and approval by the
Interstate Commerce Commission was hoped for. In
anticipation of such approval, the Virginian and the Nor-
folk & Western established and published through routes
and joint rates, from substantially all mines on the
Virginian to substantially all important markets in the
West. The Virginian then filed, on April 27, 1925, a
petition before the Commission to reopen the case and
modify its order, so that the routes which had been
opened *via* the. Norfolk & Western in partial compliance
with the order, should be accepted as the equivalent of
full compliance; and the requirement of routes and rates
*via* the Chesapeake & Ohio should be eliminated. That
petition was denied on May 11, 1925. The Virginian con-
tends that, in view of these facts, the order requiring
transportation service also *via* the Chesapeake & Ohio is
so unreasonable as to transcend the limits of the Commis-
sion's discretion, among other reasons because, through
the duplication of routes not available to mines served
only by the Chesapeake & Ohio and the Norfolk & West-
ern, respectively, it would give to mines on the Virginian
an undue preference and advantage. The argument urged
in this connection is appropriate for consideration by the
Commission, and has presumably been duly considered by
it. The fact that it has not proved persuasive affords no
basis for the contention that the Commission's action in
making the order was arbitrary or otherwise illegal.[2]

*Sixth.* The cross-appeal is directed to so much of the
final decree as stays enforcement of the Commission's
order pending the appeal. It is settled that the force and
effect of a decree of a federal court dismissing a bill and
dissolving an interlocutory injunction are not suspended

[2] On July 2, 1925, the Norfolk & Western applied to the Commis-
sion for an order under § 5, par. 2, authorizing it to acquire the Vir-
ginian by lease. The application was denied on October 11, 1926.

as a mere consequence of an appeal to this Court, even if a *supersedeas* is allowed. *Hovey* v. *McDonald,* 109 U. S. 150, 161; *Knox County* v. *Harshman,* 132 U. S. 14. An injunction which was in terms dissolved by the decree, or which expired by limitation, cannot be revived to take effect during the pendency of an appeal except by a new exercise of power by a court having the authority. Ordinarily such authority is vested in the lower federal court, as well as in this Court. Under Equity Rule 74 the judge who allows the appeal may, if he took part in the decision of the cause, make, at the time of such allowance, an order continuing an interlocutory injunction which would otherwise be vacated. *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527, 535. Prior to the establishment of the Commerce Court, Act of June 18, 1910, c. 309, 36 Stat. 539, the circuit courts had jurisdiction of suits to enjoin or set aside orders of the Commission. Compare Act of June 26, 1906, c. 3591, § 5, 34 Stat. 584, 590. As an incident of that jurisdiction, they had the usual power to preserve the *status quo* pending an appeal. The Government contends that the rule theretofore prevailing was abrogated by the Act of 1910; and that, because of similar provisions in the Act of October 22, 1913, c. 32, 38 Stat. 208, 220, the power in question was not conferred upon the district courts.

The latter Act, which abolished the Commerce Court and transferred to the district courts the jurisdiction in this class of cases, requires that applications for an interlocutory injunction to restrain the enforcement of an order of the Commission be heard before three judges; permits the issue by them, or a majority of them, of " a temporary stay or suspension " of the Commission's order for not more than sixty days pending the application for an interlocutory injunction; similarly permits them " at the time of hearing such application . . . [to] continue the temporary stay or suspension . . . until decision

upon the application"; provides for expediting the hearing; and authorizes a direct appeal to this Court from the order granting or denying the interlocutory injunction, if taken within 30 days. Compare *United States* v. *Baltimore & Ohio R. R. Co.*, 225 U. S. 306, 322. The argument of the Government is that the thing of which the operation is suspended, pending the appeal, is not the decree of the District Court, but the order of the Commission—an independent federal tribunal; that, by the language of the Act, the power of the district court to suspend the operation of the Commission's order ends with the " decision [in the district court] upon the application "; and that for these reasons, the customary power of a court of equity to preserve the *status quo* is not applicable to the suspension pending the appeal here involved.

It is clear that this Court, or a justice thereof, has power to grant a stay of the Commission's order pending the appeal. The power was exercised by the full Court in *Omaha & Council Bluffs Ry. Co.* v. *Interstate Commerce Commission*, 222 U. S. 582, in a case coming from the Commerce Court under the Act of 1910. Whether the district court of three judges under the Act of 1913 possesses like power has never been considered by this Court. The existence of the power was affirmed by a divided district court in *Louisville & N. R. R. Co.* v. *United States*, 227 Fed. 273, and the power was exercised to the extent of staying enforcement of the Commission's order until this Court should have the opportunity of determining whether a stay pending the appeal should be granted. The power has been exercised by the district court in a few other instances. But in those cases, although the Government objected to the action taken, it did not take a cross-appeal; and the question was not considered or raised upon the argument before

this Court.[3]   The question now presented was, however, passed upon under similar legislation and conditions in *Cumberland Telephone & Telegraph Co.* v. *Louisiana Public Service Commission,* 260 U. S. 212.   The practice there held appropriate in a proceeding under § 266 of the Judicial Code, must be held to be likewise authorized under the Act of 1913.

Section 266 provides for the hearing before three judges of applications for an interlocutory injunction to restrain the execution of a state statute, or of an order of an administrative board of the State pursuant to a state statute, where the statute or order is assailed on the ground that it violates the Federal Constitution.   We declared in the *Cumberland Telephone & Telegraph Co.* case, p. 219, that while this Court has power to grant a stay pending the appeal, the district court acting through three judges, or a majority of them, also possesses that power; and that because such court is " best and most conveniently able to exercise the nice discretion needed . . . the court of three judges, who have heard the whole matter, have read the record, and can pass on the issue [application for a suspension pending the appeal] without additional labor," the determination of the application will ordinarily be left to it.   The language of § 266 which limits the

---

[3] Opinions have been written by this Court in 32 direct appeals from decrees refusing to set aside orders of the Interstate Commerce Commission: 6 being from decrees of the Commerce Court under the Act of 1910, 26 from decrees of the district court under the Act of 1913. In 3 of those cases, the district court stayed the order of the Commission pending the appeal, either until this Court could pass upon an application for such a stay, *Louisville & Nashville R. R. Co.* v. *United States,* 227 Fed. 373; 242 U. S. 60; *Central R. R. of New Jersey* v. *United States,* 257 U. S. 247; or until this Court should decide the appeal, *Lehigh Valley R. R. Co.* v. *United States,* 243 U. S. 412.  In one other case only was an application made to the lower court for a stay pending the appeal, and that was denied, *Colorado* v. *United States,* 271 U. S. 153.  In so far as the records show, stays were not asked for below in the other 28 cases.

power to grant the restraining order and the interlocutory injunction is substantially the same as that employed in the Act of October 22, 1913. The two statutes are *in pari materia*. It is under § 266 that proceedings to enjoin the enforcement of rate-orders of state railroad and public utility commissions are commonly instituted.

The character of the proceeding and the end sought are the same in the two statutes. The two provisions originated in the same Act. Section 266 is a codification of § 17 of the Act of June 18, 1910, c. 309, 36 Stat. 539, 557. The provision of the Act of 1913, here in question, is an adaptation to the district courts of § 3 of the Act of 1910, which prescribed the procedure for such applications before the Commerce Court. No reason is suggested why the rule governing in cases of appeals from the district court under § 266 should not apply also to appeals from those courts under the Act of 1913. Moreover, the latter Act, in referring in the same connection to appeals from final decrees, declares that " such appeals may be taken in like manner as appeals are taken under existing law in equity cases." Congress evidently deemed that it had adequately guarded against the dangers incident to the improvident issue of the writs of injunction in cases of this character by the provisions which require action by the court of three judges, which permit of expediting the hearings before the district court, which shorten the period of appeal, and which give a direct appeal to this Court.

*Seventh.* The Government contends that, even if the District Court had power to stay the order of the Commission pending the appeal in this Court, its action was not warranted by the facts. A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. *In re Haberman Manufacturing Co.*, 147 U. S. 525. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances

of the particular case.   An application to suspend the operation of the Commission's order pending an appeal from a final decree dismissing the bill on the merits calls for the exercise of discretion under circumstances essentially different from those which obtain when the application for a stay is made prior to a hearing of the application for an interlocutory injunction, or after the hearing thereon but before the decision.   In the two latter classes of cases, if the bill seems to present to the court a serious question, the fact that irreparable injury may otherwise result to the plaintiff may, as an exercise of discretion, alone justify granting the temporary stay until there is an opportunity for adequate consideration of the matters involved.   But to justify a stay pending an appeal from a final decree refusing an injunction additional facts must be shown.   For the decree creates a strong presumption of its own correctness and of the validity of the Commission's order.   This presumption ordinarily entitles defendant carriers and the public to the benefits which the order was intended to secure.

In this class of cases an appeal bond can rarely indemnify fully even private parties to the litigation for the loss of the benefits of which the stay deprived them; and the public would usually be left wholly remediless.   To justify granting the stay after a final decree sustaining the Commission's order, it must appear either that the district court entertains a serious doubt as to the correctness of its own decision; or that the decision depends upon a question of law on which there is conflict among the courts of the several circuits; or that some other special reason exists why the order of the Commission ought not to become operative until its validity can be considered by this Court.[4]

---

[4] See *Louisville & Nashville R. R. Co.* v. *Railroad Commission*, 208 Fed. 35, 57–60; *Louisville & Nashville R. R. Co.* v. *United States*, 227 Fed. 273; *Corona Coal Co.* v. *Southern Ry. Co.*, 266 Fed. 726, 735. Compare *Cotting* v. *Kansas City Stock Yards*, 82 Fed. 850, 857;

The District Court made no finding or statement bearing upon its exercise of discretion in suspending the operation of the Commission's order, except the recital in the decree that from all the evidence in the case it is " of opinion . . . that irreparable damage will result to the complainant pending such appeal if this decree shall be reversed on appeal." We must therefore look elsewhere in the record for additional facts necessary to justify the suspension. We fail to find any. The suit was of a character deemed by Congress of such importance that it had made special provision for both adequate and speedy consideration. The strenuousness of the contest and the extensive record made clear the importance of the case not only to the mines and carriers directly concerned but also to the consuming public in the western markets. It was clear that the appeal bond could not indemnify the Virginian mines or the Chesapeake & Ohio Railroad for the loss resulting from a stay, and also that the public might suffer losses for which there would be no remedy. The decree was not entered until nearly four months after the hearing—that period being doubtless required for adequate consideration of the voluminous record. No opinion, written or oral was delivered. In view of the importance of the litigation, we interpret the absence of an opinion as tantamount to a declaration that upon careful scrutiny of the record the questions presented for judicial determination appeared to be simple; or, at all events, that the case did not involve the determination of any question of law which was novel or as to which there was, or could be, reasonable doubt. The decree of the District Court was not unanimous; but this fact alone would not justify a stay. For aught that appears, the District Court may

---

*Western Union Tel. Co.* v. *Wright,* 168 Fed. 558, 559; *Louisville & Nashville R. R. Co.* v. *Siler,* 186 Fed. 176, 203; *Rail & River Coal Co.* v. *Yaple,* 214 Fed. 273, 283; *Chadeloid Chemical Co.* v. *H. B. Chalmers Co.,* 242 Fed. 71, 72; *Masses Publishing Co.* v. *Patten,* 245 Fed. 102.

have divided on some questions of fact, or on the construction of a document.[5]   Under the circumstances appearing, the suspension of the order pending the appeal was unwarranted.   The objection to the decree asserted by the Government in No. 282 must, therefore, be sustained.

Unless an opinion indicating the grounds of the decision is delivered, a defeated party may often be unable to determine whether the case presents a question worthy of consideration by the appellate court.   This is particularly true, where the case is in equity and the decree is entered upon a hearing involving complicated facts.   For being in equity, matters of fact as well as of law are reviewable; and the reviewable issues of law are rarely sharply defined by requests for rulings.   The failure to accompany the decree by an opinion may thus deprive litigants of the means of exercising a sound judgment on the propriety of an appeal.   And the appellate court, being without knowledge of the grounds of the decision below, is denied an important aid in the consideration of the case, and will ordinarily be subjected to much unnecessary labor.

*No. 281—Decree affirmed as to matter appealed from.*
*No. 282—Decree reversed as to matter appealed from.*

1. Abandonment within the thirty day period set by the Act of March 3, 1899, will not be presumed of a wreck left in a navigable

---

[5] So far as the record discloses, the stay included in the final decree was not a continuation of a temporary restraining order, but a matter wholly original.   Apparently, no restraining order issued prior to the final decree.   The matter is not referred to in any of the briefs.