ATCHISON, T. & S. F. RY. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

District Court, E. D. Illinois, N. D.   May 14, 1928.

No. 7687.

Wallace T. Hughes and A. B. Enoch, both of Chicago, Ill., H. H. Larimore, of St. Louis, Mo., and Elmer Westlake and R. S. Outlaw, both of Chicago, Ill., for plaintiff.

Blackburne Esterline, Asst. to Solicitor General, and George E. Q. Johnson, U. S. Dist. Atty., both of Chicago, Ill., for defendant.

Before EVANS, Circuit Judge, and CARPENTER and WILKERSON, District Judges.

PER CURIAM. Plaintiffs brought this suit to enjoin, annul, and set aside an order of the Interstate Commerce Commission entered July 6, 1927, wherein the Commission ordered plaintiffs to cancel certain rates on grain and grain products published by them.

This three-judge court was convened to hear the plaintiffs' application for a temporary injunction, but it was agreed that the hearing should be a final one. Evidence consisting almost entirely of the testimony taken before the Interstate Commerce Commission was offered and received. Maps which assisted the court in better understanding the oral argument were also admitted in evidence.

Division 4 of the Interstate Commerce Commission made a report which is the basis

of the Commission's ruling. In the report we find a clear statement of the controversy, from which we here quote:

"By schedules filed to become effective December 15, 1926, and later dates, respondents, the Missouri Pacific, Santa Fé, and Rock Island, propose to establish proportional rates on grain and grain products from stations on their lines in Colorado, Kansas, and Nebraska to Kansas City, Mo.-Kans:, and from points on their lines in Kansas to Wichita, Kans., destined to Gulf ports for export, for application when the movement from Kansas City is over the Kansas City Southern Chicago & Alton, Missouri-Kansas-Texas, or Frisco and their connections and the movement from Wichita is over the Kansas City, Mexico & Orient or Midland Valley and their connections. The proposed rates are in excess of the corresponding local rates and would result in increases in the through rates over these routes by amounts ranging from 0.5 to 7.5 cents.

"Respondents' principal justification of the proposed inbound proportionals is that under section 15 (4) of the interstate commerce act they are entitled to, and we are without power to deny to them, the long haul on traffic which they originate. They contend that through routes do not exist over their lines to Kansas City in connection with the lines maintaining the varying proportional rates beyond because there is no common arrangement, express or implied, between the various carriers for through carriage. They further contend that, as the routes via Kansas City which preserve their long haul are not unduly circuitous and the service over the same is adequate, they have an absolute right to the outbound haul from Kansas City on grain originated by them; that their rights to the long haul have been and are being defeated by the varying proportional rates from Kansas City; and that they are entirely within their rights in seeking to retain the long haul by establishing the suspended inbound proportionals. They also contend that even if it be considered that through routes exist over their lines in connection with the lines maintaining the varying proportionals, we are without authority to prohibit them from withdrawing from such routes, inasmuch as we would not be warranted in compelling the establishment of such routes if they did not exist.

"Respondents have made no attempt to justify the proposed inbound proportional rates in and of themselves. The routes via Kansas City over which the proposed inbound proportional rates would increase the through charges are in many instances shorter than the routes via that point over which the rates

would not be increased. The only justification offered by respondents for an increase in the rates over such routes is their desire to retain the long haul, which, under the circumstances shown, is not sufficient. They have not sustained the burden upon them of showing that the increased through rates over the routes referred to would be reasonable and otherwise lawful."

The Commission cited a concrete case to more clearly illustrate the issue in controversy and pointed out what plaintiffs attempted to do. We quote again from its report:

"The local rate from Dodge City, Kans., to Kansas City is 20.5 cents and the outbound standard proportional 30.5 cents, a total of 51 cents. The through one-factor rate maintained by the Santa Fé from Dodge City, to Galveston, Texas, via Kansas City, with transit at that point, is 47 cents leaving an outbound transit balance of 26.5 cents. The varying proportional rate from Kansas City on grain originating at Dodge City is also 26.5 cents, which, added to the local inbound rate, equals the Santa Fé's through one-factor rate of 47 cents. The suspended inbound proportional is 24.5 cents, which added to the outbound varying proportional, equals the former combination of 51 cents. The distances from Dodge City to Galveston are 900 miles over the Santa Fé direct, 1254 miles over the Santa Fé via Kansas City, and 1187 miles over the Santa Fé to Kansas City and the Kansas City Southern and connection beyond."

Plaintiffs state their attack upon the Commission's ruling thus:

"Our action is predicated on the rights given us under paragraph 3 and 4 of section 15 of the Interstate Commerce Act."

"The effect of the order which is sought to be set aside is to require the plaintiffs to deliver grain to connecting lines at junctions such as Kansas City and Wichita and thus short haul themselves rather than be permitted to carry such grain the entire length of their own line."

Paragraph 3 of section 15, thus referred to, reads:

"The Commission may, and it shall whenever deemed by it to be necessary or desirable in the public interest, after full hearing upon complaint or upon its own initiative without a complaint, establish through routes, joint classifications, and joint rates, fares, or charges, applicable to the transportation of passengers or property * * * to be charged," etc. 49 USCA § 15(3).

Paragraph 4 of the same section reads:

"In establishing any such through route the Commission shall not (except as provided in section 3, and except where one of the

carriers is a water line), require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established." 49 USCA § 15(4).

In the course of the argument, plaintiffs' counsel frankly admitted, upon question from the court, that their attack upon the order of the Commission was based solely and entirely upon a lack of authority upon the part of the Commission to make the order complained of. To support this position counsel insisted that paragraph 4 of section 15 constitutes a limitation upon the Commission's power to regulate rates.

The fundamental difference between opposing counsel is traceable to their difference of opinion as to the character of the order in question. Plaintiffs view it as an order involving routes. Defendants say it is an order affecting rates. Both have some support for their position. For orders affecting rates may, and often do, affect routes.

If the subject of the order be rates, there can be no question but that the Commission had jurisdiction over the subject-matter. And this is so whether the rates be called local, through, or proportional rates.

Plaintiffs' attack on the order is on the hypothesis that the rate is only incidental to the routing character of the order.

■ We are inclined to the opposite view. The order, it seems to us, was one affecting rates, and routing was only incidentally involved, and as an indirect result of the change in rates.

■ Moreover, we reject the contention that paragraph 4 of section 15 imposes a limitation upon the Commission's authority to deal with rates as such. Virginian Railroad Co. v. United States, 272 U. S. 658, 664, 665, 47 S. Ct. 222 (71 L. Ed. 463). So long as the Commission deals with the question of the reasonableness of the carrier's rates, its authority to act is unquestioned—certainly not limited by subsections 3 and 4 of section 15.

That the Commission was dealing with the subject of tariffs is more clearly shown if the facts be stated somewhat differently. We thereby get another approach to the question.

Plaintiffs had on file with the Commission local tariffs governing the transportation of grain from Colorado and other western points to Kansas City. They also had on file local tariffs for transporting the same commodity from Kansas City to Gulf points. They likewise had on file through tariffs for transporting these same commodities from the points of origin in Colorado, etc., to the Gulf points. This was the situation confronting them when they filed their new schedule of rates from the aforesaid Colorado and other western points to Kansas City. Whether these new schedules are called local, or a part of through rates, or proportional rates, or varying proportionals, they are, nevertheless, tariffs. And their reasonableness was the legitimate subject of inquiry and determination by the Commission.

The bill should be dismissed for want of equity.

Let a decree be entered accordingly.