## TEXAS & N. O. R. CO. et al. v. UNITED STATES et al.

### No. 2449.

District Court, W. D. Missouri, W. D.
June 7, 1934.

Hackney & Welch, of Kansas City, Mo., and Robert Wilkins Thompson, of Dallas, Tex., for plaintiffs.

Maurice M. Milligan, U. S. Dist. Atty., of Kansas City, Mo., for defendants.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

PER CURIAM.

This is an action permitted by section 47, title 28, United States Code (28 USCA § 47). The petitioners seek to enjoin the enforcement of certain orders made by the Interstate Commerce Commission.

The first and most important of the orders was the one which prescribed a schedule of tariffs designated as the Southwestern Horse and Mule Scale. This order was based upon a finding that the transportation of horses and mules was so far analogous to the transportation of fat cattle as to justify the Commission in relating the tariffs thereto and fixing a scale of 115 per cent. of the fat cattle tariffs. Moreover, the Commission withdrew from the carriers certain relief previously granted under the fourth section of the Interstate Commerce Act (49 USCA § 4). Said Section permitted the Interstate Commerce Commission to

authorize a common carrier, upon application and after investigation in special cases, to charge more for a shorter than for a longer haul, notwithstanding statutory inhibitions.

The petitioners complain about the withdrawal of this relief, although it was expressly stated by the Commission that the petitioners "may file applications for such relief as they may require in connection with the rates here prescribed."

The basis of the charge against the validity of the orders was that they were made without substantial factual support, and that they were "arbitrary, capricious, unreasonable, and without deference or regard to the law, being either contrary to or unsupported by the evidence, or both, and hence are void and useless and should be set aside, vacated, and nullified by appropriate orders of this court."

The report of the Commission upon which the orders were based properly set forth the pith of the inquiry as follows: "A fundamental question is whether the rates on horses and mules should bear some fixed relation to the rates on other kinds of livestock, more particularly on fat cattle. The shippers and shipping organizations represented at the hearings are unanimously of the opinion that the rates on horses and mules should be related to the rates on fat cattle, and they cite the Dimmitt-Caudle-Smith case, the South Dakota case, and Nebraska Livestock case, wherein such a relationship was prescribed."

The report then contained a recital that: "Various unusual expenses are incurred in the transportation of livestock. Among these are the costs of construction and maintenance of loading and unloading enclosures and runways. Special tracks have to be constructed to these yards, and facilities afforded for feeding, watering, and resting livestock in transit under the requirements of the Federal 28-hour law."

The Commission, after enumerating peculiarities in the transportation of live stock, said: "None of these expenses are peculiar to the transportation of horses and mules. They are incurred in the transportation of all livestock. Such evidence does not justify the singling out of horses and mules as the exception to the general application on all kinds of ordinary livestock of rates related to the fat-cattle rates."

Thereafter the Commission pointed out differences in the two classes of live stock. It said: "The only substantial transporta-

tion disadvantages of horses and mules as compared with other forms of ordinary livestock are a higher percentage of claims for loss and damage and a higher per car valuation. The shippers concede that horses and mules are more subject to injury than cattle, but they will be satisfied with a higher level of rates than may apply on cattle."

Thereafter, the Commission set forth in detail the data gathered by it in the form of evidence, and from it made its deductions and based its orders. It made a full statement of the facts, and then found: "That maximum reasonable rates for the transportation of horses, mules, burros, and asses between points in the territory described at the beginning of this report will be 115 percent of the rates on cattle from and to the same points."

In prescribing such rates it was necessary for the Commission to modify and readjust former scales of rates. The object of the law is to secure and enforce reasonable charges for the transportation of property and to forbid unreasonable and unjust charges. Moreover, preferences and discrimination are prohibited. To the end that no hardship might be imposed in an individual case, "flexible administrative processes" were provided so that adjustments might be made from time to time and previous orders modified so as to meet the necessities of the time and place.

■ 1. In view of the allegations of the bill and the statements contained in the brief of petitioners that the Commission acted arbitrarily, capriciously, and unreasonably, this court must at the outset indulge the recognized presumption of the law, that public officers will not only do their duty, but that they will perform such duty faithfully. This presumption must be indulged in the absence of proof to the contrary.

■ Moreover, if the orders of the Commission are supported by substantial testimony, in the absence of irregularity or misapplication of principles of law, the court would be precluded from interference. Furthermore, "the findings of the Commission are made by law prima facie true, and this court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience." Interstate Commerce Commission v. Union Pacific R. Co., 222 U. S. 541, 32 S. Ct. 108, 111, 56 L. Ed. 308.

If, therefore, the findings of the Commission are supported by any substantial evi-

dence, this court will be concluded, except, as above stated, some irregularity in the proceedings or some error in the application of the rules of law should require judicial relief.

■ 2. It is obvious from the report of the Commission, and from the statements and briefs of the parties, that there was substantial evidence in support of the order of the Commission fixing the rate for the transportation of horses and mules at 115 per cent. of the rate or schedule of rates on fat cattle.

Ordinarily, this would end the discussion, for, as stated in State of Florida et al. v. United States et al., 292 U. S. 1, 54 S. Ct. 603, 608, 78 L. Ed. 1077: "when the Commission exercises its authority upon due hearing, as prescribed, and without error in the application of rules of law, its findings of fact supported by substantial evidence are not subject to review. It is not the province of the courts to substitute their judgment for that of the Commission."

It is difficult to perceive how the Commission could have related the scale of tariffs pertaining to horses and mules to any other property more logically than that of fat cattle. According to the report of the Commission, other live stock shipments were related in the same fashion.

■ 3. There is nothing in the record to indicate that the decision made by the Commission on July 24, 1933, "was preconceived and premeditated."

This decision was not accompanied by an order, but, on the contrary, the carriers were afforded an opportunity voluntarily to adjust their scale of tariffs to meet the decision of the Commission. The matter had been pending before the Commission for several years. Admittedly, it was beset with complexities and involved questions. These were solved finally by the decision of July 24, 1933, although, as stated, it required a modification and partial amendment of previous orders. The carriers did not proceed to readjust in accordance with the decision

of the Commission, but filed their petition for a rehearing.

This petition raised and agitated the same questions that previously had vexed and probably somewhat confused the Commission. The Commission doubtless felt that the controversy should be in repose after so long an inquiry and controversy, and accordingly denied the petition.

About one month later, or to be exact, on December 11, 1933, it promulgated the orders here complained against. This would not indicate that the Commission acted capriciously, arbitrarily, or unreasonably, but, on the contrary, that it proceeded with commendable deliberation and caution. Moreover, the fact that the Commission invited application from the carriers to secure the relief vouchsafed to them under section 4 of the Interstate Commerce Act would negative the charge that the Commission was guilty of arbitrary and capricious action.

■ 4. It does not seem necessary to discuss other constitutional questions raised by the pleadings and briefs of the parties. It was clearly the right of the Commission "to compare the rates assailed with other rates which in its judgment formed a proper basis of comparison." Northern Pacific R. Co. v. United States (D. C.) 60 F.(2d) 302, 308; Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, loc. cit. 98, 33 S. Ct. 185, 57 L. Ed. 431.

■ Moreover, it is not within the province of the court either to consider the weight of the evidence before the Commission or "the soundness of the reasoning by which its conclusions were reached, or whether the findings are consistent with those made by it in other cases." Virginian R. Co. v. United States, 272 U. S. 658, loc. cit. 663, 47 S. Ct. 222, 224, 71 L. Ed. 463.

In view of the above, the bill and the evidence in support thereof are insufficient to warrant interference with the enforcement of the orders assailed, and in consequence the bill should be dismissed.