## COPPERWELD STEEL CO. et al. v. UNITED STATES et al.

### Civ. No. 10103.

United States District Court
W. D. Pennsylvania.
June 24, 1952.

Elliott W. Finkel, Maurice J. Mahoney and David Roth (of Finkel & Roth), Pittsburgh, Pa., for plaintiff.

Margiotti & Casey, Pittsburgh, Pa., Anthony P. Donadio, and John R. Wall, Baltimore, Md., for intervening plaintiff.

Robert W. Strange, Sp. Asst. to Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for United States.

Allen Crenshaw, Asst. Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

Before STALEY, Circuit Judge, GOURLEY, Chief Judge, and MARSH, District Judge.

GOURLEY, Chief Judge.

The matter before this Court is an action to set aside and annul an order of the Interstate Commerce Commission, entered September 28, 1951, cancelling a tariff of the Baltimore and Ohio Railroad as being in violation of Section 6(7), 49 U.S.C.A. § 6(7), of the Interstate Commerce Act and

denying the petitions of the plaintiff and intervening plaintiff to reconsider its decision.

A three-judge court was convened as required by Title 28 U.S.C.A. §§ 2284 and 2325. The case was heard on March 11, 1952 at which time all matters involved were duly considered. All issues were submitted for final adjudication.

The following facts appear from the Commission's report of December 1, 1947, and its report on further hearing of September 28, 1951, and were substantially reiterated at the hearing before this Court.

Copperweld operates a steel manufacturing plant adjacent to the right of way of the B & O within the switching limits of Warren, Ohio. The plant includes an elaborate layout of industrial tracks used for loading, unloading and switching cars of raw materials and manufactured products in its yards numbered 100, 200, 300 and 500, which are located immediately north, southeast, south and west, respectively, of the plant buildings and structures. Copperweld owns and operates three diesel locomotives, one steam engine, four locomotive cranes and a number of railroad cars of various descriptions.

The connection used by B & O to deliver cars to and remove cars from the plant leads northwestwardly from its tracks to yard 100, track 100.

Upon arrival of the train at yard 100, Copperweld's yardmaster tenders a switch list to B & O's conductor, which designates the places where inbound cars should be placed or spotted by B & O's crew. There are track scales located on track 100 where inbound cars of scrap iron are weighed. The inbound cars of scrap iron are thereafter switched by B & O engines to other tracks and other yards, from which they are thereafter moved by Copperweld's engines, and cars of other materials and empty cars are placed or spotted at various points in the plant for unloading and loading. B & O's engines likewise switch outbound empty and loaded cars from the plant to track 109 in yard 100 where the outbound train is marshaled. In the course of removal to track 109, cars loaded with ingots and produced scrap iron and cars from which scrap iron has been unloaded are weighed on track 100. Other outbound commodities are weighed by Copperweld before loading.

The suspended tariff provided that B & O would pay Copperweld $1.19 per car, with minor exceptions and modifications, for switching services performed by Copperweld beyond yard 100. The Commission in its report and order of September 28, 1951, found that tracks on yard 100 were suitable for interchange of cars between Copperweld and B & O and that the responsibility of B & O to deliver cars as a part of line-haul transportation ended at this point of interchange, and that, therefore, B & O could not lawfully assume the obligation for the further switching and spotting of cars.

Plaintiffs have raised numerous objections to the Commission's order, but substantially these objections entertain the thesis that the findings of the Commission are not supported by the evidence and are arbitrary and beyond the power of the Commission to make.

■ This Court cannot assume the burden of substituting its views for those of the Commission on matters for which the Commission is specially trained and experienced, having the technical know-how and interpretive facilities at its disposal.

■ The point in time and space at which the carrier's transportation service ends is a question of fact to be determined by the Commission and not the courts; and its findings on that question will not be disturbed by the courts if supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456.

The facts are extremely detailed as to the numerous switching operations conducted on the premises of Copperweld.

■ The fact that the Commission's determination did not accept the recommendations of the examiner, was weighed in the Court's review of the Commission's substituted findings, Universal Camera Corp. v. N. L. R. B., supra. However, what is

preserved in the record satisfactorily discloses that the Commission's substituted findings were compellingly justified.

There is no doubt in our minds that there was substantial evidence upon which to predicate a conclusion that said switchings constituted an interruption of a continuous transportation movement and necessarily became a terminal operation.

The Court could not overlook the glaring incongruity of plaintiffs' position. The Copperweld yards encompassed 18 miles of track. An average of 25 cars entered, and 25 cars departed from said yards each day.

Despite Copperweld's contention that the movements through its yards were continuous and uninterrupted, we could not ignore the salient fact that the B & O Railroad employed three full crews, who were engaged not only in bringing the cars up to yard 100, but in conjunction with additional personnel of Copperweld, also devoted a substantial part of their time in facilitating the movements within the Copperweld yards. The multiplicity of switching operations conducted within these yards consumed an average of ten · to sixteen hours per day on the part of the crew of the B & O Railroad.

How well the Commission utilized the evidence before it or what weight it assigned to its various parts is not a matter upon which this Court may rule. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 512, 513, 64 S.Ct. 1129, 88 L.Ed. 1420. The facts in determining where transportation ceases and terminal operations begin are empiric, fluid and complex. They are not to be shifted from the shoulders of the experts commissioned to handle them to the backs of the judiciary; nor are the broad powers of judgment conferred upon the experts to be unduly hampered. Western Paper Makers' Chemical Co. v. U. S., 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941. Correctness of reasoning, soundness of conclusion or alleged inconsistency of findings with those of prior proceedings are not to be inquired into by the courts. Virginian Ry. Co. v. U. S., 272 U.S. 658, 665, 666, 47 S.Ct. 222, 71 L.Ed. 463.

The Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. This cause came on to be heard before a duly constituted statutory court which was conveyed pursuant to statute, 28 U.S.C.A. § 2284(1) and § 2325, to hear and determine the applications.

2. By agreement of the parties the issues were submitted upon final hearing, upon the pleadings and upon the complete record of the proceedings before the Interstate Commerce Commission and the said Commission's findings and decision thereon.

3. This proceeding was brought to enjoin, set aside, annul and suspend the reports and orders of the Interstate Commerce Commission made on December 1, 1947, as modified on September 28, 1951, the proceeding known as the Investigation and Suspension Docket No. 5357, Terminal Allowance, Copperweld Steel Company, Warren, Ohio.

4. The Order of the Commission issued on September 28, 1951, required the carrier, B & O Railroad Company, to cease and desist on or before December 17, 1951 to provide terminal service for the Copperweld Steel Company under its interstate line haul rates beyond the interchanged tracks described in the Order of the Commission on the premises of Copperweld Steel Company.

5. The Order of the Commission further provided that the B & O Railroad Company was required to cancel the schedules referred to in the Commission's report on or before November 15, 1951, such schedules relating to changes made between the B & O Railroad Company and the Copperweld Steel Company for the performance of terminal services on the premises of Copperweld Steel Company.

6. The Interstate Commerce Commission had before it substantial evidence in support of its findings.

### Conclusions of Law

1. The Court has jurisdiction of this cause and of the parties thereto.

2. The Interstate Commerce Commission had jurisdiction over the proceedings wherein the said Orders of December 1, 1947 and September 28, 1951 were made, and to make the said Orders.

3. Said Orders were within the constitutional and statutory authority of the Commission, and were not arbitrary or based upon mistake of law or misapplication of the proper statutory standards. Said Orders were made by the Commission upon adequate findings, supported by substantial evidence, and in accordance with the applicable law, and were and are valid and lawful in all respects.

4. The Interstate Commerce Commission has suspended the effectiveness of the orders issued from time to time, pending disposition of the questions raised in the within proceeding, the last suspension order to expire on June 25, 1952.

5. The relief prayed for in the complaint should be denied, and the suit dismissed; plaintiffs to pay the costs.