**Frank "X" ST. CLAIRE**

v.

**Julius CUYLER et al.**

**Civ. A. No. 78–4134.**

United States District Court,
E. D. Pennsylvania.

Dec. 28, 1979.

Edmond A. Tiryak, Community Legal Services, Philadelphia, Pa., for plaintiff.

Mark N. Cohen, Deputy Atty. Gen., Eastern Regional Office, Philadelphia, Pa., for defendants.

### OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendants have applied to me, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure for a stay of my final judgment and order of November 29, 1979. Rule 62(c) provides that in its discretion a court may stay its order granting an

injunction pending appeal.[1] According to Rule 8(a) of the Federal Rules of Appellate Procedure, an application for a stay pending appeal "must ordinarily be made in the first instance in the district court," and if denied, a stay may be sought in the Court of Appeals. Since I am denying the application for a stay, I will briefly outline my reasons so as not to "deprive [the] litigants of the means of exercising a sound judgment on the propriety of an appeal," nor to deprive the appellate court of "knowledge of the grounds of the decision." *Virginian Railway Co. v. United States*, 272 U.S. 658, 675, 47 S.Ct. 222, 229, 71 L.Ed. 463 (1926); 9 Moore's Federal Practice, ¶ 208.08 at 1424 (2d ed. 1975).

This suit was brought by Frank "X" St. Claire, a Muslim inmate at the State Correctional Institution at Graterford, for declaratory, injunctive and damage relief for alleged infringements of his First and Fourteenth Amendment rights of free exercise of his religion. Plaintiff contended that by their refusal to permit him to wear his kufi (religious hat) in the dining area and through the security gate to a meeting with the Parole Board, and by preventing all inmates housed in segregated units from attending chapel, the prison authorities impermissibly interfered with his First Amendment free exercise rights.

In my November 29, 1979 opinion, in conjunction with findings of fact, I held that the applicable legal test required defendants to show a substantial or important governmental interest furthered by means least restrictive of the constitutional right in question, and that defendants had not met these requirements. By the order of November 29, 1979, the defendants were enjoined from preventing plaintiff from wearing a kufi and were required to permit plaintiff to attend chapel unless after a

hearing they determined that his presence at chapel would disrupt prison security.[2]

■ On December 14, 1979 defendants filed an application for stay of the November 29, 1979 final judgment and order. A party seeking a stay under Rule 62(c) [3] must show a likelihood of prevailing on appeal, that it will suffer irreparable injury if the stay is denied, that other parties will not be substantially harmed by the stay, and that the public interest will be served by granting the stay. *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 104 U.S.App.D.C. 106, 259 F.2d 921 (D.C.Cir. 1958); *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685 (5th Cir. 1968); *Resident Advisory Board v. Rizzo*, 429 F.Supp. 222 (E.D.Pa.), *aff'd*, 564 F.2d 126 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

### 1. Likelihood of Prevailing on Appeal

■ Although the circuits differ as to the extent of a petitioner's burden, *compare, e. g., Greene v. Fair*, 314 F.2d 200, 202 (5th Cir. 1963) ("great likelihood, approaching near certainty") *with Reserve Mining Co. v. United States*, 498 F.2d 1073, 1076 (8th Cir. 1974) ("strong showing"), it is under any criterion a heavy one. It would be perhaps unusual for a district court having issued a final judgment after a trial on the merits to conclude that an appellant is likely to succeed on appeal. Nonetheless, under circumstances where the holding is novel, or resolves a question of first impression, a trial court might choose to stay its order pending analysis by an appellate court.

In this case, although the particular claims (wearing of religious headgear and attendance at chapel services) have not been previously addressed either by this or the circuit court, the Third Circuit has

---

1. The relevant text of Rule 62 is as follows:

   "(c) Injunction Pending Appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

2. Plaintiff's prayer for damages was denied, based on the successful assertion by defendants of a good faith defense.

3. *See* note 1, *supra*.

defined the applicable test in *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973). Consistent with the Supreme Court's holding in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Third Circuit in *O'Malley* requires that the means employed to effectuate the state goal must result "in the least possible 'regulation' of the constitutional right consistent with the maintenance of prison discipline." 477 F.2d at 796. In addition, without repeating the analysis undertaken in the November 29, 1979 opinion, although I found *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) to be inapposite, with regard to the wearing of religious headgear, I also held that were *Wolfish* to be construed so as to reach the claims in the instant case, plaintiff had satisfied the "exaggerated response" standard. With regard to the chapel attendance claim, defendants had the burden of demonstrating that the total ban was the least restrictive means consistent with the maintenance of prison discipline. Upon review of defendants' present petition, I find again that test to be clearly mandated by *O'Malley*,[4] and not to have been met by defendants.

## 2. Irreparable Injury

The order of November 29, 1979 enjoined defendants from preventing Mr. St. Claire from wearing his kufi and attending religious services (with the qualifications as noted therein).[5] That defendants may choose to conduct inspections (only those reasonably necessary) of plaintiff's headgear or be required to hold a hearing should plaintiff petition to attend chapel while in a segregated housing unit, cannot measure up to even a minimal definition of irreparable injury. In *Virginia Petroleum Jobbers Association*, the D.C. Circuit noted that the key word is "irreparable." "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at the later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." 259 F.2d at 925. Should the Third Circuit reverse this court's order, defendants' challenged policies can be reinstated with a loss of little more than a lapse of time.

## 3. Effect of Stay on Plaintiff's Rights

Plaintiff in this case asserted and I so found that he was deprived by the prison regulations in question of his First Amendment rights of free exercise of religion. As observed in the November opinion, these rights are precious and protected. Although not any less precious, they are less protected when the claim is asserted by a prison inmate. Yet it is a measure of the caution required before restricting these rights that a court must carefully assess a prison's most fundamental concerns of security and order against the prisoner's claim. Were it otherwise it would not be necessary to define these concerns as "substantial" or "important", or indeed, "compelling"; and any rationally related means would be permissible to effectuate these concerns.

By contrast, free exercise rights are of constitutional dimension, thus manifesting a belief that for government to deprive an individual of these rights is contrary to this nation's fundamental political principles.

4. Although surely one hesitates before denying one's "creativity," 7 Moore's Federal Practice, ¶ 62.05 at 62–25 n.15c (2d ed. 1978), I find my holding to be squarely within the *O'Malley* test. In the November 29, 1979 opinion I reviewed the case law regarding chapel attendance by inmates in segregated units. (Discussion of, *e. g.*, *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854 (4th Cir. 1975) (en banc); *LaReau v. MacDougall*, 473 F.2d 974 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973); *Sharp v. Sigler*, 408 F.2d 966 (8th Cir. 1969); slip op. at 17–18. I do not consider it necessary to repeat that analysis here.

5. Defendants in the stay application cite *Wojtczak v. Cuyler*, 480 F.Supp. 1288 (E.D.Pa. 1979) as support for the proposition that security concerns prevent prisoners in segregated units from attending chapel. Judge Becker in *Wojtczak*, however, found his holding to be consistent with this court's opinion in *St. Claire*. At p. 1300 n.13.

In this light a stay would indeed harm plaintiff, for having determined that the prison regulations at issue violate his First and Fourteenth Amendment rights, plaintiff would nonetheless still be prevented unnecessarily from practicing his religion. Defendants in their application for a stay argue that since plaintiff is free to exercise all "fundamental" aspects of his religion, harm to him would be only minimal. Defendants' Application at 4. This assertion in essence repeats defendants' argument at trial that only an observance "mandated" by a religion is protected. I rejected that contention in the November opinion, slip op. at 8, and stand by that holding.[6]

### 4. Public Interest

Defendants assert that when a prison facility is administered efficiently, the public interest is served. Although an accurate proposition, this is in fact an incomplete one: although efficiently run, a prison facility must be administered within constitutional principles. The public interest requires no less.

In sum, in balancing the equities I conclude that defendants have not made the necessary showing for this court to stay its earlier judgment and order.

---

**6.** In addition, defendants offer the novel argument that by conducting himself so as to avoid confinement in a segregated housing unit plaintiff will suffer no harm, since there will be no restrictions on his attendance at chapel. But for this assertion, I would have thought it self-evident that that was one of the issues at trial. Suffice it to say that it was.