**SOUTHERN RAILWAY COMPANY et al., Plaintiffs,**

v.

**The UNITED STATES of America et al., Defendants.**

Civ. A. No. 1253.

United States District Court
W. D. North Carolina,
at Charlotte.
July 8, 1957.

John M. Robinson, Charlotte, N. C., W. T. Joyner, Raleigh, N. C., Arthur J. Dixon, Henry J. Karison and R. Granville Curry, Washington, D. C., for plaintiffs.

Victor R. Hansen, Asst. Atty. Gen., James M. Baley, Jr., U. S. Atty., Asheville, N. C., James E. Kilday and Charles R. Esherick, Attys., Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginnane, Gen. Counsel, B. Franklin Taylor, Jr., Asst. Gen. Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

A. K. McIntyre, Erwin, Tenn., J. P. Fishwick, Roanoke, Va., R. B. Gwathmey, Wilmington, N. C., James W. Hoeland, Louisville, Ky., for intervenors, defendants.

Before PARKER, Chief Judge, HAYNSWORTH, Circuit Judge, and WARLICK, District Judge.

HAYNSWORTH, Circuit Judge.

This action was commenced in the United States District Court for the Western District of North Carolina by the plaintiffs, components of the Southern Railway System, against the United States and the Interstate Commerce Commission to enjoin the enforcement of a decision and order of the Interstate Commerce Commission entered on November 15, 1956, in a proceeding entitled "Carolina, Clinchfield and Ohio Railway v. Southern Railway Company et al."

Pursuant to the requirements of § 2325 of Title 28 of the United States Code a three-judge Court was convened in accordance with the provisions of § 2284 of Title 28 of the United States Code, and the case was heard in accord-

ance with the requisite procedures therein set forth.

Upon motion Atlantic Coast Line Railroad Company, Carolina, Clinchfield and Ohio Railway, Carolina, Clinchfield and Ohio Railway of South Carolina, Georgia Railroad & Banking Company, Interstate Railroad Company, Louisville and Nashville Railroad Company, Norfolk and Western Railway Company, and Harlan County Coal Operators Association were permitted to intervene as parties defendant.

The controversy revolves around rates applicable to certain routes for fine coal moving from mines on the lines of the Interstate Railroad Company, the Louisville and Nashville and the Norfolk and Western in eastern Kentucky, eastern Tennessee and southwestern Virginia to destinations on the lines of the Southern and its short line connections in North Carolina and South Carolina.

Prior to April 8, 1954, there were in effect joint rates on through routes to destinations on the lines of the Southern in the Carolinas which were applicable to all grades of coal. From mines in the Clinch Valley area on the lines of the Norfolk and Western coal could move over the lines of that railroad to St. Paul, Va.; thence by the Clinchfield to Marion, North Carolina or Spartanburg, South Carolina, and the Southern beyond. Alternately it could move over the lines of the Norfolk and Western to Norton, Va.; thence via Interstate to Applachia and the Southern, through Asheville, beyond.

From mines on the Interstate the coal could move to Miller Yard; thence via the Clinchfield to Marion, N. C., or Spartanburg, S. C., and the Southern beyond, or, alternately, to Appalachia and the Southern, through Asheville, beyond.

From mines in the Harlan District on the Louisville and Nashville the coal could move to Dorchester Junction, Va.; thence by Interstate to Miller Yard; thence by Clinchfield to Marion, N. C., or Spartanburg, S. C., and the Southern beyond, or it could move westwardly by the Louisville and Nashville through Cor-

bin, Ky., to Knoxville, Tenn., thence by the Southern, through Asheville, beyond.

For destinations in the southern portions of South Carolina, coal originating on the L and N could move by a third alternate, over the lines of that railroad to Atlanta, thence the Georgia Railroad to Augusta, Ga., and the Southern beyond.

All of these were open, active routes, and fine coal, as well as other grades of coal, moved over the routes in which the Clinchfield and the Georgia Railroad were participants.

Because of increasing competition from natural gas, oil and other fuels the carriers involved proposed a voluntary reduction in the rate on fine coal amounting to 35¢ a ton. A like reduction was proposed upon coal originating in mines on the lines of the Chesapeake & Ohio moving by that railroad to Elkhorn City, Kentucky, and thence by the Clinchfield to Marion, N. C., or Spartanburg, S. C., and the Southern beyond.

The Southern agreed to the proposed reduction but restricted its agreement to those routes over which it got its longest haul. It thus participated in the reduction on the Clinchfield route for coal originating on the lines of the Chesapeake & Ohio, but declined to participate in the reduced rate on fine coal moving from mines on the Louisville and Nashville, the Interstate and the Norfolk and Western over routes in which the Clinchfield or the Georgia Railroad were participating carriers. Appropriate tariff schedules were filed and the reduced rate on fine coal became effective on April 8, 1954, restricted, however, to those routes on which the Southern had its longest haul.

Because of the resulting rate differential of 35¢ a ton, shipments of fine coal were diverted from the Clinchfield and Georgia Railroad routes and thereafter the only shipments of fine coal moving over the higher rated routes appeared to have been the result of mistake or inadvertence of the shipper.

Coal in larger sizes, unaffected by the rate reduction on fine coal, continued to

move over routes of the Clinchfield and the Georgia Railroad as theretofore.

On August 29, 1955, approximately seventeen months after the reduced rates on fine coal on the restricted routes became effective, the Louisville and Nashville, Norfolk and Western, Interstate, Clinchfield, Georgia Railroad and the Seaboard Air Line Railroad filed a complaint with the Interstate Commerce Commission, in which the Southern was made the defendant, for the establishment of reasonable joint rates upon the routes in which the Clinchfield and the Georgia Railroad were participating carriers. That proceeding resulted in the decision and order, enforcement of which the Southern now seeks to enjoin. In its order the Commission required the carriers involved to place into effect and maintain joint rates on fine coal from the mines of origin to destinations on the Southern, and its short line connecting carriers, in the Carolinas over routes in which the Clinchfield and the Georgia Railroad were participants at the same level as the previously published rates restricted to the routes in which the Southern had its longest haul.

The position of the Southern is that the voluntary reduction in the joint rate on fine coal restricted to those routes on which it had its longest haul, effectively closed the alternate routes to fine coal traffic and that those routes cannot be "reopened" for such traffic except pursuant to the provisions of § 15(4) of the Transportation Act of 1940, 49 U.S.C.A. § 15(4), and upon the basis of full and complete findings in accordance with the standards of that Section. In effect, the position of the Southern is that the order of the Commission, would compel the creation or establishment of through routes which were nonexistent in August 1955.

With this position, we cannot agree.

The Southern with the other carriers concerned, many years ago, had established through routes and joint rates over the lines of the Clinchfield and the Georgia Railroad for all sizes of coal moving from mines on the L and N, the Inter-

state and the Norfolk and Western, in the areas with which we are concerned, to destinations in the Carolinas on the lines of the Southern and its short line connections. The rates for such coal of all sizes had been fixed by the Commission in Carolina Coal Consumers Conference v. A. & R. R. Co., 270 I.C.C. 291, to which there had been added subsequently authorized general increases. There is no doubt that prior to April 8, 1954, the routes of the Clinchfield and the Georgia Railroad were open, active through routes over which fine coal actually was moving under joint rates at the same level as those applicable over alternate through routes.

The rate reduction effected on April 8, 1954, but restricted to those routes in which the Southern had its longest haul, did not close the previously existing through routes. It is quite true that shippers, ordinarily, would route fine coal over the lower rated routes rather than the higher rated routes, but though at a higher level, the joint rates over the routes of the Clinchfield and the Georgia Railroad applicable to all sizes of coal, including fine coal, remained in effect and uncancelled.

■■ The Act provides a procedure by which a carrier may cancel a through route which is uneconomic or burdensome, but it carries the burden of proof in the hearings that may be held upon its application. Through routes may also cease to exist because of abandonment or long neglect. Thus in Denver & Rio Grande Western Railroad Co. v. Union Pacific, 351 U.S. 321, 76 S.Ct. 982, 100 L.Ed. 1220, the Court upheld the finding by an evenly divided Commission that routes were technically closed as through routes where it appeared that joint rates had been cancelled more than forty years previously and over which in the last forty years shipments could move only at much higher combination rates. The Court, however, considered the long lapse of time after the cancellation of joint rates as only one circumstance to be taken into account and its holding was only that upon the evidence the Commis-

sion was not compelled to find that the routes were still open as through routes.

Here there has been no formal cancellation of the joint rates much less of the through routes, and the time involved in comparison with the lapse of time in the Denver & Rio Grande Western case is negligible.

■ Through routes may be found to exist though no joint rate has ever been applicable to it. But the existence of a joint rate necessarily presupposes the existence of a through route. See United States v. Great Northern Railway Co., 343 U.S. 562, 72 S.Ct. 985, 96 L.Ed. 1142.

These routes, including the Clinchfield and the Georgia Railroad as intermediate carriers, have been operated as joint routes for many years. Joint rates applicable to them had historically been at the level of the joint rates over competing routes. Shippers used them actively.

Nothing occurred on April 8, 1954, to change their character as through routes. The tariffs establishing joint rates over them remained in effect. The publication of lower rates over competing routes diverted traffic from them, but there has been no such acquiescence over an extended period of time as would imply an abandonment, by mutual agreement, of these routes as joint routes.

It would be anomalous, indeed, if a railroad, seeking the closure of a joint route, by establishing a lower rate on a competing route, could relieve itself of the burden of proof imposed upon it and transfer to the other participating carriers in the joint route the heavy burden of meeting the requirements of § 15(4) of the Act.

We conclude that there was abundant evidence to support the findings of the Commission that the Clinchfield and Georgia Railroad routes were through routes within the meaning of the Act and that the Commission could compel a reduction in the joint rates over those routes without reference to the requirements of § 15(4) of the Act. United States v. Great Northern Railway Co.,

343 U.S. 562, 72 S.Ct. 985; Virginian Railway Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Great Northern Railway Co. v. United States, D.C.D.Del., 81 F.Supp. 921, affirmed 336 U.S. 933, 69 S.Ct. 750, 93 L.Ed. 1093; Southern Railway Co. v. United States, D.C.E.D.Va.1957, 154 F.Supp. 562.

That the Commission did so find is clear. Its references in its decision to these routes as "closed" was in a commercial sense only, for the Commission was emphasizing the diversion of traffic which naturally occurred as a result of the establishment of lower rates on competing routes.

The Southern also contends that even though the Commission was authorized to proceed under its rate making powers without regard to § 15(4), its action in reducing the assailed rates to the level of the joint rates voluntarily established over competing routes was unreasonable and arbitrary. However, the Commission had before it evidence that abundantly justified its finding.

■ The routes in which the Clinchfield and Georgia Railroad are participating carriers are shorter than alternate routes over which the lower rate applied. Car-mile revenue over these routes at the same rate is higher than over Southern's long haul routes. Southern's participation at the lower rate in fine coal shipments originating on the Chesapeake & Ohio and delivered to Southern by the Clinchfield at Marion, N. C., or Spartanburg, S. C., while refusing to participate at the same rate in shipments over substantially the same route originated by the Louisville and Nashville, the Interstate or the Norfolk and Western was inconsistent and disruptive of long established group relationships. The assailed rates are too high to move traffic. It is clear that only by reducing the joint rates over these routes to the level of the rates over competing routes could these routes participate in the available traffic and only thereby could established relationships be restored.

We conclude that the action of the Commission was abundantly justified by the evidence before it and its findings based thereon. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432; Virginian Railway Co. v. United States, 272 U.S. 658, 47 S.Ct. 222.

An appropriate order will be entered dismissing the complaint and denying the application for an injunction.